1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

MARK WATKINS, an individual; WILLIAM CROSIER, an individual; ALEX THARAPPEL, an individual; and ROES 1 through 100 inclusive,

        Plaintiffs,

    v.

AVALONBAY COMMUNITIES, INC., a Maryland Corporation,

        Defendant.

Case No. 3:25-cv-01119-AJB-BLM

**ORDER ON JOINT MOTION AND STIPULATION FOR ORDER ESTABLISHING ELECTRONIC DISCOVERY PROTOCOL**

Judge: Anthony J. Battaglia

Magistrate Judge: Barbara L. Major

Mint

Plaintiffs Mark Watkins, William Crosier, and Alex Tharappel, and Defendant AvalonBay Communities, Inc. (each individually, a "Party," and collectively, the "Parties"), by and through their respective counsel, hereby stipulate and agree to, and request the Court's entry of the following Stipulated Order Establishing Electronic Discovery Protocol ("Order"), concerning the process by which electronic discovery will be handled in the above-captioned action (the "Action"), as follows:

## I.    PURPOSE

This Order will govern discovery in the Action of documents stored in electronic format and other Electronically Stored Information ("ESI"), including paper documents that have been converted to an electronic format. Nothing in this proposal is intended to obligate the Parties beyond that which is required under the Federal Rules of Civil Procedure, the Local Rules of this Court, or any other applicable statutes, orders, or rules.

## II.    GENERAL PRINCIPLES

The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter. This Order may be modified in the Court's discretion or by agreement of the Parties for good cause shown. This Order only applies to the Parties to the Action; provided, however, that any non-party that is obligated to produce documents or ESI in the Action pursuant to Fed. R. Civ. P. 45 may elect to make such productions in conformity with this Order.

## III.    PRESERVATION

Each Party shall be responsible for taking reasonable and proportionate steps to preserve potentially relevant documents and ESI in its possession, custody, or control. Absent a showing of good cause, the Parties shall not be required to modify, on a going-forward basis, the procedures used by them in the ordinary course of business to back up and archive data; provided, however, that the Parties shall preserve the non-duplicative discoverable information currently in their possession, custody, or control.

Absent a showing of good cause by the requesting Party, the following categories of ESI need not be preserved or produced: (i) deleted, fragmented, or other data only accessible by forensics; (ii) random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system; (iii) on-line access data such as temporary internet files, history, cache, cookies, embedded links and the like; (iv) back-up data that are duplicative of data that are more accessible elsewhere; ; (v) electronic mail messages sent to or from mobile devices (*e.g.*, iPhone or Android devices), provided that a copy of such mail is routinely saved elsewhere; (vi) other electronic data stored on a mobile device, including, but not limited to, calendar or contact data or notes, provided that a copy of such information is routinely saved elsewhere; (vii); (viii) server, system or network logs; and (ix)

## IV.    IDENTIFYING POTENTIALLY RELEVANT DOCUMENTS AND ESI

With respect to custodial data sources (*e.g.,* email, personal drives, cloud storage locations, etc.), the Parties will meet and confer regarding an agreed upon set of sources, custodians, search terms, and operative date range(s) each will use to cull and identify potentially responsive documents for review to ensure discovery is reasonable, proportionate, and not unduly burdensome. The Party in control of the documents and ESI sought will make initial proposals for sources, custodians, search terms, and date ranges, subject to input from the Party requesting the material. If any search term, date range, or source results in overly broad results and/or an unreasonable number of false hits, the Parties will meet and confer in good faith to consider refining or modifying the search terms, date range, or source. To the extent agreement cannot be reached, the Parties reserve all rights to perform/execute any portions of the above protocol and/or to seek appropriate Court intervention. The Parties will meet and confer to the extent non-custodial data sources (e.g., shared

STIPULATION AND JOINT MOTION FOR ORDER ESTABLISHING
ELECTRONICALLY DISCOVERY PROTOCOL

servers, databases, etc.) that cannot be reasonably searched using the agreed-upon criteria contain potentially relevant information or data.

**V.    PRODUCTION FORMATS**

a. <u>**ESI**</u>. Documents gathered from electronic repositories, servers, or sources shall be produced in the following format:

i. <u>TIFFs</u>. The Parties will produce all ESI as single-page TIFF (Tagged Image File Format), 300 DPI resolution images which are commonly loaded into eDiscovery software review tools such as Relativity, except as provided herein. To the extent a color version of the ESI is requested and produced pursuant to Paragraph 5(a)(xii) below, the producing Party will produce a JPEG (Joint Photographic Experts Group) overlay with compressed 300 DPI resolution. To the extent that production in TIFF or JPEG format would eliminate, hide, or render inaccessible any content in the native version of a document (such as comments, notes, redlines, animations, graphics, audio, video, or hidden content), the document shall be produced in native format pursuant to subsection (iii) below.

ii. <u>Unique IDs</u>. Each TIFF image should have a unique file name, using the Bates Number of the first page of the document. Bates Numbers shall be unique IDs with a prefix that can be readily attributed to the producing Party. Bates Numbering should be sequential. If a Bates Number or set of Bates Numbers is skipped in a production, the producing Party will so note.

iii. <u>ESI in Native Format</u>. Documents in native format that cannot be reasonably reviewed except on a computer, Excel files and other spreadsheets, databases and data sets, and audio-visual files, shall be produced in native format rather than TIFF for JPEG format. Excel files and other spreadsheets will be processed so that the extracted text file contains all columns and rows and any hidden information. For these native or other format files, the producing Party will also provide a single-page placeholder referencing the native file with a Bates Number for the file. Non-Standard PDFs may be produced with OCR text. Each Party reserves

- 4 -

the right to request native versions of specific documents produced in non-native format to the extent necessary to render the documents usable.

iv. <u>Load Files/Cross-Reference Files</u>. ESI produced shall be provided with (i) Concordance delimited load file(s), and (ii) Opticon delimited cross-reference file(s). Every TIFF in each production must be referenced in the production's corresponding load file. The total number of images referenced in a production's load file should match the total number of TIFF files in the production. The database load file shall include a reference to any native files that are produced.

v. <u>Parent-Child Relationships</u>. Parent-child relationships (the association between an e-mail and its attachments and documents and extracted embedded items) should be preserved. Email attachments and extracted embedded items should be produced sequentially after the parent email.

vi. <u>Text Files</u>. For each document, a document level text file should be provided along with the TIFFs and native file (as applicable) at the time of production of the corresponding TIFFs. If the document contains extractable text, the extractable text should be provided. If the document does not contain extractable text, the producing Party may provide OCR for that document, except that documents with redactions shall be produced with redacted OCR text files. Text files for documents with redactions will not contain the redacted portions of the documents.

vii. <u>Metadata Fields</u>. The metadata fields set forth in Exhibit A should be provided to the maximum extent programmatically available for each produced document. The Parties reserve their rights to object to any request for the creation of metadata for documents that do not contain metadata in the original. For the avoidance of doubt, no Party has an obligation to create or manually code metadata fields that do not exist as part of the original metadata of the electronic document except for: ProdBeg; ProdEnd; ProdBegAttach; ProdEndAttach; Custodian and All Custodian. Custodians should be identified using the convention "Last Name, First Name" or "First Name, Last Name." The Parties may rely on the metadata

- 5 -

automatically generated by the processing of the ESI, and no Party has an independent obligation to review the metadata of individual files or to ensure the metadata's accuracy. The Parties also reserve the right to redact and/or withhold any metadata subject to corresponding privileged information being withheld or redacted.

        viii.  <u>Confidentiality</u>: The Parties have entered into a stipulated protective order in this Action which specifies various confidentiality treatment levels for use in this case. The producing Party will brand any confidentiality endorsement on the bottom left-hand corner of each production image representing the produced item. Such endorsements must be in a consistent font type and size and must not obscure any part of the underlying image or Bates number.

        ix.  <u>De-duplication and Threading</u>.  The producing Party may deduplicate ESI that is exact and identical globally across all custodians' ESI using industry standard hash value-based processes. The Parties may also thread documents using industry standard thread group identification analysis, the process of identifying email relationships (*i.e.*, threads, people involved in a conversation, and duplicate emails) and grouping them together for review and production as well as removing from review and production non-inclusive email content resulting from the threading analysis.  If the receiving Party believes that an email, including any attachments, was improperly threaded and removed from review and/or production, the receiving Party may raise the issue to the producing Party, and the Parties agree to meet and confer in good faith to resolve the issue. To the extent the Parties globally deduplicate custodial data, an All Custodian metadata field should track each custodian who possessed a particular document.

        x.  <u>Technology-Assisted Review, Predictive Coding, and Generative AI</u>. To the extent a Party wishes to use any technological process for the culling of data from review (*e.g.*, predictive coding), the Party will disclose its intent to use that technology and the name of the technology to be used. The Parties will not put any of the other Party's information or data into ChatGPT, Google Gemini, DeepSeek,

or any other versions or systems where the terms of use allow the host or any of its other customers or agents to have access to the data for AI training or any other purposes.

xi. <u>Track Changes.</u> Documents containing track changes will be processed to display tracked changes.

xii. <u>Color Documents</u>. The producing Party may produce TIFF images in black and white. If, upon review, the requesting Party seeks a color version of a specific document, this will be brought to the attention of the producing Party by Bates number reference. The requesting Party must articulate a reason why a color version is necessary.  Requests for JPEG color overlays identified by Bates number should be granted unless a material, good-faith issue makes compliance with such requests overly burdensome or unreasonable in expense, in which case the Parties will meet and confer to seek resolution to the dispute.

xiii. <u>Foreign Language Documents</u>. All documents shall be produced in their original language. Where a requested document exists in a foreign language and the producing Party also has an English-language version of that document that it prepared for non-litigation purposes prior to filing of this Action, the producing Party shall produce both the original document and all English-language versions. Nothing herein shall require a producing Party to prepare a translation, certified or otherwise, for foreign language documents that are produced in discovery.

xiv. <u>Encrypted Files</u>. To the extent practical and in accordance with standard eDiscovery industry and practice, the producing Party shall take reasonable efforts to ensure that all encrypted files are decrypted prior to processing and searching and shall produce passwords for any password-protected natives files produced to the extent the passwords are reasonably available. To the extent any encrypted files are produced, upon request, the producing Party shall promptly take reasonable steps to facilitate the decryption of the files.

xv.  <u>Databases</u>. Where necessary, the Parties agree to meet and confer on the identity of any databases and/or files created in proprietary applications (e.g., structured data), and the format in which responsive data should be produced from those systems to the extent reasonably possible (e.g., export to Microsoft Access or SQL) although fielded data and inquiry outputs in a CSV or Excel format will be acceptable in the first instance for any such databases or applications that have such query reporting functionality. If a Party contends that CSV or Excel format is insufficient the Parties will confer in good faith to resolve the issue.  If they are unable to do so, either Party may seek appropriate Court intervention.

b.  **Hard Copy Documents**. Documents gathered in hard-copy should be provided in the format described above, to the extent applicable, and should also be formatted as follows, to the extent reasonably possible:

i.  <u>Unitizing of Documents</u>. Paper documents scanned prior to the initiation of this Action may be produced in their original scanned format.  In scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., paper documents should be logically unitized). The Parties will make their best efforts to logically unitize documents correctly and will address situations where there are improperly unitized documents.

ii.  <u>Objective Coding Fields</u>. The following objective coding fields should be provided: (a) beginning Bates Number; (b) ending Bates Number; (c) beginning Bates Number of Parent document; (d) ending Bates Number of last attachment; (e) number of pages; and (f) custodian.

iii.  <u>OCR Text.</u> A producing Party need not provide a corresponding OCR text-file for hard copy documents produced.  If, upon review, the requesting Party seeks an OCR text file for a hard copy document, this will be brought to the attention of the producing Party by Bates number reference. The requesting Party must articulate a reason why an OCR text-file is necessary.  Requests for OCR text-

file overlays identified by Bates number should be granted unless a material, good-faith issue makes compliance with such requests overly burdensome or unreasonable in expense, in which case the Parties will meet and confer to seek resolution to the dispute.

## VI.    PRIVILEGED DOCUMENTS AND ESI

Any obligation to provide a log of privileged materials or materials protected by the work product doctrine presumptively shall not apply to: (a) attorney work-product created by outside or in-house counsel for the Parties regarding this Action created after the filing of the first complaint; (b) internal communications among outside counsel for each of the Parties, respectively, regarding this Action created after the filing of the first complaint; (c) communications between outside counsel and the Party they represent regarding this Action after the filing of the first complaint; (d) redacted documents where: (1) for emails, the bibliographic information is not redacted, and (2) for non-email documents, the redaction is noted on the production image) along with the grounds for redaction. The Parties agree to confer regarding other categories of information that may be excluded from logging requirements.

The Parties agree that, except as provided herein regarding privileged documents and ESI presumptively excluded from a log, they will produce privilege logs and will exchange information regarding claims of privilege and/or work-product protection no later than 45 days after production of the documents subject to claims of privilege or work product. The parties may agree to defer completion of privilege logs until after completion of a production or series of productions. With respect to documents and ESI that have been withheld as privileged, the withholding Party shall provide a privilege log of such documents and ESI, providing the following objective metadata to the extent it is reasonably available: date, author(s), custodian(s), recipient(s), file type, file name, and subject (to the extent the subject does not reveal protected content). In addition, the withholding or redacting Party

shall also provide for each document on its privilege log an identifier for the privilege being asserted (e.g., "ACP" for attorney client privilege, "WP" for work product, or other descriptions as necessary based on the specific privilege being claimed), the document's Bates numbers or other unique identifier, and a description of the nature of the privileged or protected material in such a way that will enable other Parties to assess the claim.

The Parties reserve the right to request additional information regarding individual documents on the privilege log. If a requesting Party requires further information for any withheld or redacted document, it shall explain in writing the need for such information and identify by Bates number/document ID the documents or category of documents for which it seeks this information. Within fourteen (14) days of such a request, the producing Party must either (i) provide the requested information; or (ii) challenge the request. If the producing Party challenges a request for further information, the Parties shall meet and confer to seek a mutually acceptable solution.

## VII.  LIMITATIONS AND NON-WAIVER

Pursuant to Federal Rule of Evidence 502, the inadvertent disclosure or production of privileged or work-product-protected documents, ESI, or other information, does not constitute a waiver of privilege or protection from discovery in this Action or in any other federal or state proceeding, and the Parties stipulate that each other Party will take reasonable steps to prevent any such inadvertent disclosure or production as part of this Order and in executing discovery in accordance with its terms. This Order shall be interpreted to constitute an order of this Court pursuant to Federal Rule of Evidence 502(d) and provide the maximum protection allowed by Federal Rule of Evidence 502.

In the event of an inadvertent disclosure of privileged material, the producing Party shall identify the specific information or documents that are alleged to be privileged and were inadvertently disclosed and request their return. The receiving

STIPULATION AND JOINT MOTION FOR ORDER ESTABLISHING ELECTRONICALLY DISCOVERY PROTOCOL

Party shall return the documents or ESI to the Party claiming the privilege or protection, and destroy any physical or electronic copies, including those residing on a document review platform, within five (5) business days, unless the receiving Party contests the claim of privilege or basis for protection, in which case the producing Party must – within fourteen (14) business days of receipt of notice that the receiving Party contests the claim of privilege – seek Court intervention under the Court's procedures. Pending resolution of the Parties' privilege dispute, the Party to whom the allegedly privileged or protected documents or ESI were inadvertently produced must not use them in any way or disclose them to any person.

All other issues of privilege, including the inadvertent production of privileged or protected documents or information, shall be governed by any protective order entered by the Court in this Action and all Federal and Local Rules, including Federal Rule of Civil Procedure 26(b)(5)(B).

## VIII.  OTHER PRODUCTION ISSUES

a.  <u>Staged Production</u>. The Parties may produce ESI in stages, provided that production is completed in a reasonably prompt manner and in accordance with the deadlines set forth in any applicable Scheduling Order, the Federal Rules, and Local Rules. If documents cannot be produced within 30 days of a request, the Parties will confer on an appropriate timeline.

b.  <u>Time Zone</u>. When processing documents, UTC shall be selected as the time zone.

c.  <u>Discovery Costs</u>. Each Party will bear its own costs for the preservation, production, and restoration (if necessary) of any documents or ESI in its possession. However, in agreeing to this Order, no Party waives or relinquishes any right or interest it may have to seek cost shifting or apportionment for the costs of electronic discovery.

d.  <u>Best Efforts Compliance and Disputes</u>. The Parties agree to use their best efforts to (where possible) comply with, and resolve any differences concerning

compliance with, any provision of this Order. No Party may seek relief from the Court concerning compliance or non-compliance with this Order until it has met and conferred with the other Party in good faith to resolve or narrow the area(s) of disagreement. Similarly, if a Party determines that a variation or modification of this Order is necessary to facilitate the timely and economical production of documents and ESI, then it shall promptly notify the requesting Party, and the Parties shall meet and confer in good faith regarding the appropriateness of the variation or modification.

      e. <u>Waiver</u>. The Parties have not agreed to waive any privileges or, except as specifically provided herein, to impose obligations different than those contained in the Federal Rules of Civil Procedure, the Local Rules of this Court, or any other applicable statutes, orders, or rules. Nothing in this Order shall be construed to affect the admissibility of discoverable information. Compliance with this Order does not constitute a waiver, by any Party, of any objection to the production of particular ESI on any ground permitted under the Federal Rules of Civil Procedure, the Local Rules of this Court, or any other applicable statutes, orders, or rules. For the avoidance of doubt, nothing herein shall contradict the Parties' rights and obligations with respect to any information designated under any protective orders stipulated to and/or entered by the Court in this action.

## IX.    MODIFICATIONS

Any practice or procedure set forth herein may be varied by agreement of the Parties, and first will be confirmed in writing, where such variance is deemed appropriate to facilitate the timely and economical exchange of electronic data or other covered discovery materials. Should any Party subsequently determine in good faith that it cannot proceed as required by this Order or that the Order requires modification, the Parties will meet and confer to resolve any dispute before seeking Court intervention.

SO STIPULATED.

1

2     Dated:  September 12, 2025          **ROBINSON MARKEVITCH &**
                                         **PARKER LLP**

3

4                                        By: /s/ Jimmie Davis Parker
                                             _____
5                                            Damion D. D. Robinson
                                             David Markevitch
6                                            Jimmie Davis Parker

7                                        Attorneys for Plaintiffs
                                         MARK WATKINS, WILLIAM
8                                        CROSIER and ALEX THARAPPEL

9

10    Dated:  September 12, 2025          **MINTZ, LEVIN, COHN, FERRIS,**
                                         **GLOVSKY AND POPEO, P.C.**

11

12                                       By: /s/ Valerie Phan
                                             _____
13                                           Antony Nash
                                             Mathilda S. McGee-Tubb
14                                           Valerie Phan

15                                       Attorneys for Defendant
                                         AVALONBAY COMMUNITIES, INC.

16

17

18

19

20

21

22

23

24

25

26

27

28

STIPULATION AND JOINT MOTION FOR ORDER ESTABLISHING
ELECTRONICALLY DISCOVERY PROTOCOL

# EXHIBIT A

| METADATA FIELD | DESCRIPTION |
|---|---|
| EMAIL FROM | Sender<br>Semi-colon should be used to separate multiple entries |
| EMAIL TO | Recipient(s)<br>Semi-colon should be used to separate multiple entries |
| EMAIL CC | Carbon copy recipient(s)<br>Semi-colon should be used to separate multiple entries |
| EMAIL BCC | Blind carbon copy recipient(s)<br>Semi-colon should be used to separate multiple entries |
| EMAIL SUBJECT | Subject line of the email |
| DATE SENT | Date the email was sent<br>Format shall MM/DD/YYYY |
| TIME SENT | Time the email was sent/time zone in which the emails were standardized during conversion |
| AUTHOR | As attributed in Author field of electronic document |
| FILE EXTEN | The file type extension representing the Email or native file document; will vary depending on the email format |
| FILE SIZE | Size of file produced |
| DATE CREATED | Date the document was last saved, in MM/DD/YYYY format |
| TIME CREATED | 24-Hour format |
| DATE MODIFIED | Date the document was last saved, in MM/DD/YYYY format |
| TIME MODIFIED | 24-Hour format |
| NATIVE LINK | Hyperlink to the email or native file document to enable loading to database for review |
| OCR PATH | Path to extracted text of the native file |
| FILE NAME | Original native file name |
| PAGE COUNT | Number of pages/images per document |
| MD5HASH | Hash value used for de-duplication |

STIPULATION AND JOINT MOTION FOR ORDER ESTABLISHING ELECTRONICALLY DISCOVERY PROTOCOL

**IT IS SO ORDERED.**

Dated:  9/15/2025

_____
Hon. Barbara L. Major
United States Magistrate Judge

STIPULATION AND JOINT MOTION FOR ORDER ESTABLISHING
ELECTRONICALLY DISCOVERY PROTOCOL