UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK WATKINS, et al., <br><br> Plaintiffs, <br><br> v. <br><br> AVALONBAY COMMUNITIES, INC., et al., <br><br> Defendants. | Case No.: 25CV1119-AJB (BLM) <br><br> **ORDER GRANTING IN PART PLAINTIFFS' MOTION TO COMPEL FURTHER DISCOVERY RESPONSES** <br><br> **ECF No. 29** <br><br> **[REDACTED]** |

Currently before the Court are Plaintiffs' November 3, 2025 Motion to Compel Further Discovery Responses ("MTC") [ECF No. 29], Defendant's November 20, 2025 revised opposition to the motion ("Oppo") [ECF No. 40], and Plaintiffs' December 1, 2025 reply ("Reply") [ECF No. 44]. For the reasons set forth below, Plaintiffs' motion is **GRANTED** in part.

**FACTUAL BACKGROUND**

This putative class action challenges Defendant AvalonBay's ("Defendant") security deposit practices. Plaintiffs allege Defendant retains residential security deposits from former tenants in violation of California law. MTC at 1 (citing Complaint ("Compl."), ECF No. 1.) Plaintiffs claim Defendant centrally administers security deposit policies and procedures uniformly across its California properties. Id. at 1; Compl. at ¶ 108. Plaintiffs identify three "centralized deposit practices" which they claim result in "uniform statutory violations." MTC at

1-2. These three challenged practices are: (1) the fixed-fee "Clean Sweep Program"; (2) use of self-generated Itemized Apartment Receipts ("IARS") in place of vendor-provided invoices; and (3) deductions for work performed by Defendant's employees without statements "describing the work performed, the time spent, and the cost of labor." MTC at 2-3 (citing Compl. at ¶¶ 13-15, 120, 150, 153, 122-125, 141-145, 152-158.)

The originally named Plaintiffs[1] are former residents of Defendant's property known as "AVA Pacific Beach" from approximately July 2023 to August 2024, and they seek to represent all "residents of Defendant's property [throughout California] whose leaseholds terminated within four years prior to the filing of this Complaint through the date of final judgment" who had at least $125 of their security deposit retained for cleaning, repairs, and/or replacements combined. Compl. at ¶ 179.

## DISCOVERY BACKGROUND

On August 27, 2025, Plaintiffs served their First Set of Special Interrogatories and Requests for Production of Documents ("RFP") on Defendant. Decl. of Jimmie Davis Parker in Supp. of MTC ("Parker Decl.") at 29-1 at 33, Ex. A. Defendant served its responses and objections to the RFPs on September 26, 2025 and acknowledged that Plaintiffs had agreed to an extension to respond to the interrogatories. Id. at 32-33. After the parties agreed to an extension, Defendant served its responses and objections to Plaintiffs' RFPs on October 10, 2025. Id. at 31-32. The parties met and conferred "in multiple written, telephonic videoconference meet and confers in an effort to resolve the discovery disputes without court intervention" but could not reach a resolution. Id. at ¶ 2.

On October 23, 2025, the parties jointly contacted the Court regarding Defendant's responses. ECF No. 28. In regard to the dispute, the Court set a briefing schedule. Id. The parties timely filed their pleadings.[2] See MTC, Oppo, and Reply. In addition, Plaintiffs and

---

[1] Mark Watkins, William Crosier and Alex Tharappel are the originally named Plaintiffs.
[2] Defendant's initial opposition was timely filed on November 17, 2025 but they later discovered a typographical mistake in their opposition and sought leave to file a revised opposition which was granted by the Court on November 20, 2025. See ECF Nos. 34, 39, 42.

Defendant sought leave of Court to file their pleadings under seal. ECF Nos. 35, 39, 45, and 47. The Court granted the parties leave to file the motion, revised opposition, and reply under seal. ECF Nos. 32, 37, 47.

## **LEGAL STANDARD**

The scope of discovery under the Federal Rules of Civil Procedure is defined as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

District courts have broad discretion to determine relevancy for discovery purposes. See Hallett v. Morgan, 296 F.3d 732, 751 (9th Cir. 2002). District courts also have broad discretion to limit discovery to prevent its abuse. See Fed. R. Civ. P. 26(b)(2) (instructing that courts must limit discovery where the party seeking the discovery "has had ample opportunity to obtain the information by discovery in the action" or where the proposed discovery is "unreasonably cumulative or duplicative," "obtain[able] from some other source that is more convenient, less burdensome, or less expensive," or where it "is outside the scope permitted by Rule 26(b)(1)").

The scope of pre-class certification discovery lies within the sound discretion of the trial court. Coleman v. Jenny Craig, Inc., 2013 WL 2896884, at *4 (S.D. Cal. June 12, 2013) (citing Kamm v. Cal. City Dev. Co., 509 F.2d 205 (9th Cir.1975)). In seeking discovery before class certification, Plaintiffs bear the burden of making a *prima facie* showing that the Fed. R. Civ. P. 23 requirements are satisfied or that discovery is likely to substantiate the class allegations (Mantolete Burden). Salgado v. O'Lakes, 2014 WL 7272784, at *4 (E.D. Cal. Dec. 18, 2014); see also Coleman, 2013 WL 2896884, at *4 (citing Mantolete v. Bolger, 767 F.2d 1416, 1424 (9th Cir. 1985) ("Although in some cases a district court should allow discovery to aid the

determination of whether a class action is maintainable, the plaintiff bears the burden of advancing a prima facie showing that the class action requirements of Fed. R. Civ. P. 23 are satisfied or that discovery is likely to produce substantiation of the class allegations. Absent such a showing, a trial court's refusal to allow class discovery is not an abuse of discretion.")).

Fed. R. Civ. P 23(a) permits a class action to proceed where

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

## PLAINTIFFS' MOTION

Plaintiffs seek an order from the Court compelling Defendant to supplement its responses to include information for their deposit-handling policies, procedures, and practices statewide rather than just for the single property, AVA Pacific Beach. MTC at 5. Specifically, Plaintiffs seek to compel further responses to RFP Nos. 1-8, 17-19, 28, 31, 33-34, 36, 40-45 and interrogatories Nos. 1-10, 15-19. Id. at 15. The parties' central dispute is Defendant's decision to limit its responses to the single apartment complex and to not include all of its statewide properties. Id. at 3.

Plaintiffs propounded discovery seeking "(a) the identification of class members and data relevant to the amount in controversy, (b) production of Defendant's statewide policies and procedures relating to deposit accounting and retention; and (c) a representative sampling of tenant "move-out packets". Id. at 3. Plaintiffs argue that there is "substantial evidence" of uniform statewide security deposit policies and procedures, as well as uniform implementation of these policies and procedures. Id. at 3-4.

## DEFENDANT'S OPPOSITION

Defendant contends that Plaintiffs have not met the Mantolete standard to justify the pre-certification statewide discovery Plaintiffs are seeking. Oppo at 3. Defendant argues that the Court should deny Plaintiffs' motion for three reasons. First, Plaintiffs have failed to make the

requisite showing to permit this type of discovery or that this discovery will substantiate their class allegations under Fed. R. Civ. P. 23 and Mantolete. Id. at 4. Second, precedent supports "limiting pre-certification discovery to the property where Plaintiffs reside." Id. (citing Munguia-Brown v. Equity Res., 2017 WL 2645500, at *3 (N.D. Cal. June 20, 2017)). Third, the discovery requests are irrelevant, disproportionate, and unduly burdensome in violation of Fed. R. Civ. P. 26(a)(1). Id.

## PLAINTIFFS' REPLY

Plaintiffs reply that they have provided more evidence than what is required under the Mantolete *prima facie* standard. Reply at 2-3. Specifically, Plaintiffs have submitted evidence demonstrating that there is a statewide centralized and uniform practice regarding how Defendant implements both the security deposit and move-out policies and procedures and the "Clean Sweep" program. Id. at 3.

Plaintiffs argue that the "move-out" packets are relevant because the information they contain are essential to substantiate the class allegations. Id. at 7. In addition, Defendant's argument that the requested discovery will create an undue burden is without merit because the retrieval efforts for a company of Defendant's size is not overly burdensome and the burden argument is undermined by the declarations of Defendant's own employees. Id. 8-9. Finally, Plaintiffs argue that any privacy concerns with the requested discovery are alleviated by the protective order that has been entered in this case and can also be adequately addressed by the proposed Belaire-West procedure. Id. at 9-10.

## DISCUSSION

Plaintiffs are seeking an order from the Court compelling Defendant to supplement its responses to RFP Nos. 1-8, 17-19, 31, 36, 40-45. MTC at 1. These RFPs seek production of "vendor procurement and invoice requests," "standardized forms and dispute handling," "Clean Sweep Program Data and Participation," "Aggregate Class Data," "Corporate Oversight, Compliance, and Employee Discipline," and "Software, Databases and ESI Systems." Decl. of Parker, Ex. A at 14-17. Defendant agreed to produce discovery in response to these RFPs but only as to the AVA Pacific Beach Property and objected to producing responsive documents on

a statewide level. MTC, Appendix I, ECF No. 29 at 21-40. However, Defendant acknowledged that "many of the documents AvalonBay has produced (or will produce) apply to AVA Pacific Beach *and* AvalonBay's other California properties" and are responsive to Plaintiffs' RFPs requesting "corporate policies, employee training and compliance materials." Oppo at 1 (emphasis in original.) Unfortunately, Defendant's discovery responses do not identify which documents that they have produced are applicable only to AVA Pacific Beach and which are applicable to all of their California properties.

Plaintiffs also are seeking an order from the Court compelling Defendant to supplement its responses to Special Interrogatories 1-10 and 17-19. MTC at 1. These interrogatories seek information identifying the class members, numerical and statistical data, information related to operational knowledge and implementation of policies, identification of third party vendors, and identify of individuals involved in the creation of Defendant's statewide policies. MTC, Appendix I, ECF No. 39 at 40-50. Once again, Defendant restricted its responses to this discovery to AVA Pacific Beach rather than all the properties it owns statewide.

The dispute over whether Defendant must supplement its responses by providing statewide discovery, instead of limiting discovery to the one property where the currently named Plaintiffs resided, is the "single overarching dispute [] that affects nearly every category." MTC at 7. The Court will therefore address this dispute first.

1. Pre-Certification Class Discovery

The initial inquiry is whether Plaintiff has made a *prima facie* showing in accordance with Mantolete that Rule 23 commonality is likely to be satisfied and/or that the requested discovery is likely to substantiate class allegations. The Mantolete standard places the burden on Plaintiffs who are seeking statewide pre-certification discovery to make a *prima facie* showing. Mantolete, 767 F.2d at 1424-25.

Plaintiffs provide five types of evidence to make their *prima facie* showing: (1) Defendant's 2024 Form 10-K filing; (2) declarations from former tenants who resided at multiple properties in California; (3) Defendant's verified interrogatory responses and document production; (4) overlapping class action pending in the Central District; and (5) the parties' Joint

Stipulation of Dismissal. Defendant challenges the meaning and value of each type of evidence.

### A. Plaintiffs' First Amended Complaint

Before discussing the evidence, the Court notes that the pleadings have changed in a way that dramatically impacts the pending motion. On December 5, 2025, while this motion was pending, Plaintiffs filed a motion seeking to add new Plaintiffs to the action who did not reside at AVA Pacific Beach. See ECF No. 49. On December 15, 2025, Defendant filed a "Statement of Non-Opposition to Plaintiffs' Motion for Leave to File First Amended Complaint." ECF No. 51. On the same day, District Judge Anthony Battaglia granted Plaintiffs' motion and authorized Plaintiffs to file their First Amended Complaint ("FAC"). See ECF Nos. 52, 53. District Judge Battaglia also ordered Defendant to respond to the FAC on or before January 6, 2026. ECF No. 52 at 2.

In the FAC, Plaintiffs add three new plaintiffs who did not reside at AVA Pacific Beach. Id. at 3. The three new proposed plaintiffs are: (1) Janelle Dixon who resided at Avalon at Cahill Park in San Jose; (2) Rachel Oboyle who resided at Avalon La Jolla Colony in San Diego; and (3) Derek Chipman who resided at eaves Huntington Beach in Huntington Beach and AVA Little Tokyo in Los Angeles. Id. Each of these new plaintiffs are alleging materially similar allegations regarding the security deposit practices and the Clean Sweep program implemented by Defendant at four different properties.

In Defendant's discovery responses to a majority of the RFPs, Defendant agreed to produce responsive discovery "if any, concerning AVA Pacific Beach (the property at which the Named Plaintiffs resided) only." See ECF No. 29 at 23-40. The addition of these new Plaintiffs and properties directly refute the Defendant's attempt to limit discovery to a single property. At a minimum, the new Plaintiffs require Defendant to supplement its response to include information relevant to the new properties. More importantly, the allegations of the new Plaintiffs are consistent with the allegations of the original Plaintiffs regarding Defendant's centralized and uniform security deposit practices and therefore provide significant support for Plaintiffs' motion.

### B. Defendant's SEC Filing

Defendant's 2024 Form 10-K filing[3] describes a centralized shared services center that conducts administrative functions including billing, collections, and responses to resident inquiries. MTC at 14 citing Req. for Judicial Notice, Ex. 4, AvalonBay 2024 Form 10-K at 4. Plaintiffs argue that this description establishes that Defendant's "operating model" is one that relies on the "capabilities of [Defendant's] centralized shared services center" assisted by onsite associates. Id. They note that it does not reflect any ability on the part of the onsite associates to implement policies or procedures specific to an individual property. Plaintiffs emphasize that the Form 10-K states that AvalonBay relies on "centralization of lease renewal activity, as well as many community administration and support tasks at our shared service center." Id. at 5.

Defendant argues that Plaintiffs mischaracterize the Form 10-K and asserts that the Form 10-K emphasizes the role of onsite associates in evaluating the units after the tenant has moved out and providing those evaluations to the AvalonBay Customer Care Center ("CCC"). Oppo at 5. Defendant notes that the CCC must contact the individual "community" to confirm and resolve any dispute. Id.

The Form 10-K reveals a business model that is built around centralization and uniform processes related to the security deposits rather than decentralized, property-specific policies and procedures. While Defendant demonstrates some level of involvement by onsite management, the language in the Form 10-K clearly indicates that billing, collections, and resident-response functions from all of the California properties are conducted through a centralized service center. The role of the onsite management appears to be limited to initial data gathering and submitting this data to the CCC, and then the actual decisions regarding the handling of the security deposits are made by the CCC.

---

[3] Plaintiffs seek judicial notice of Defendant's Form 10-K filings with the Security and Exchange Commission (SEC) as a publicly traded company. See Req. for Judicial Notice, ECF No. 29-2 at 3. Plaintiffs note that this form is available on the SEC's website. Id. Defendant has not opposed this request and therefore, Plaintiffs' request for judicial notice is GRANTED.

The Court finds that Defendant's Form 10-K supports a finding that a significant portion of the policies and procedures at issue in this discovery dispute and in the instant case are centralized and applicable to all of Defendant's California properties. The Court further finds that the role of the onsite associates does not negate the evidentiary value of the Form 10-K, which supports Plaintiffs' *prima facie* showing.

### C. Former Tenants' Declarations

Plaintiffs present declarations from some of the current plaintiffs, as well as other former tenants who resided at properties owned and operated by Defendant in California. All of these declarations attach documents referred to as "Statement of Deposit Accounting" or "SODA" and an "Itemized Apartment Receipt" or "IAR." See Decl. of Alex Tharappel, ECF No. 29-3, Exhs. A, B; Decl. of Mark Watkins, ECF No. 29-4, Exhs. A, D; Decl. of Rachel O'Boyle, ECF No. 29-5, Exhs. C, E; Decl. of Janelle Dixon, ECF No. 29-7, Exhs. A, B; Decl. of Bryan Dewey, ECF No. 29-8, Exhs. A, B; Decl. of Satej Bhogill, ECF No. 29-9, Exhs. H, 1. The Court has reviewed these documents and finds that they demonstrate a uniformity across different properties as these forms are all generated by the "AvalonBay Customer Care Center" ("CCC") rather than by an individual property management group and appear to have substantially identical formatting and content.

Each SODA attached as an exhibit to these declarations is a standard corporate form template that has the same letterhead, corporate identification, summary table of deposit, itemized charges, dates, and a payment deadline. See id. The explanatory footnotes in each SODA, specifically with regard to their debt collection practices, are the same. See id. The only differences are the names of the individual tenants, the unit address, and the amount they were charged. Id. Likewise, the IARs attached to the declarations as exhibits follow an identical corporate form template that shows the same corporate identification, a row for each charge category such as cleaning, carpeting, and painting, the assigned vendor, amount for repair or replace, and the name of the former tenant and unit they resided in. See id.

Five of the seven former tenants who submitted declarations also provided email communications from what appear to be corporate email domains such as

"priorresident@avalonbay.com" and "residentrecovery@avalonbay.com." Four of the former tenants received emails from "priorresident@avalonbay.com" with identical language informing them that a SODA had been "processed for this account," notifying them that an "unpaid balance remains and is currently due," and instructing them to mail the payment to "AvalonBay Communities, Inc." located in Virginia Beach, Virginia. See Tharappel Decl., Exh. A; Watkins Decl., Exh. A; Dixon Decl., Ex. A; and Dewey Decl., Exh. A. Former tenants Watkins and Bhogill both received emails containing nearly identical language from priorresident@avalonbay.com informing them that the AvalonBay CCC had reviewed their accounts, along with their "resident file," and "determined that all damage charges are valid." See Watkins Decl., Exh. C; Bhogill Decl., Exh. E. These emails, along with the SODAs and IARs, demonstrate that the paperwork associated with the handling of security deposits and move-outs are uniform and generated from corporate templates as opposed to by individual properties management.

Defendant does not dispute that corporate templates were used or that a large amount of the emails came from a corporate domain but instead argues that there is no uniformity because some of the email inquiries attached to these declarations between the former tenants and Defendant were handled by "onsite associates at the relevant AvalonBay community" and not always through the CCC. Oppo at 12. A review of the declarations show that when a tenant did engage with an onsite associate, they were directed to contact the CCC. Former tenant Bhogill corresponded via email with Austin Grisham, the "AvalonBay Manager" at eaves Mission Ridge, regarding his dispute over move out charges billed by AvalonBay. See Bhogill Decl. at ¶ 10, Exh. C. In response to his request for documentation for the charges, Grisham responded "[m]y apologies, in these kinds of situations you would need to go through the central office because they are in charge of billing." Id. Former tenant Janelle Dixon corresponded via email with the AvalonBay "Community Manager," Jessica Hernandez, for Avalon at Cahill Park. See Dixon Decl. at ¶ 12, Ex. C. Dixon also was disputing the charges billed by AvalonBay after she moved out of the unit. Id. Hernandez emailed Dixon informing her "typically damage disputes are handled by the billing center and note (sic) the onsite team." Id. These declarations demonstrate that the onsite associates are guided by corporate policy and retain little, if any,

discretion as to how they handle the security deposits which is a core allegation in this matter. In fact, these declarations show that onsite associates consistently direct former tenants to the CCC.

The Court finds that the tenant declarations and attached documentation provide significant support to Plaintiff's assertion that the security deposit policies and procedures are uniform across multiple AvalonBay properties and are handled by a centralized corporate entity. The minimal involvement of communication with the individual properties does not negate the evidentiary value of the documents and communications.

### D. Defendant's Verified Discovery Responses

Plaintiffs argue that in its verified interrogatory responses, Defendant "expressly confirmed that its security deposit policies are developed and maintained at the corporate level and disseminated company-wide through centralized systems." MTC at 12. Defendant maintains an "internal intranet" that provides access to all employees of security deposit policies and when a new policy is issued, the changes are "announced through AvalonBay's monthly communication update ("MCU") distribution." Parker Decl. at ¶ 6. Defendant also admitted that the "generation and distribution of tenant move-out disclosures is also handled through its central corporate operations." MTC at 12 citing Parker Decl. at ¶ 6. Defendant's only argument in response to this showing by Plaintiffs is to state, without citation, "a common method of disseminating information does not translate into a common *modus operandi* toward residents across over 100 unique communities." Oppo at 6-7. While Defendant's statement may be technically accurate, Defendant's discovery responses support the argument that there are common policies and procedures applicable to all of Defendant's California properties that are implemented and controlled by a central corporate group.

Plaintiffs also rely on Defendant's production of documents related to the "Clean Sweep" program to demonstrate that the "Clean Sweep" program is centrally created and administered at the corporate statewide level. See MTC at 15; 23-26. Defendant acknowledges that "an AvalonBay policy document states that the Clean Sweep program 'must be consistently offered to all residents.'" Oppo at 5-6. Defendant argues in response that the policy itself provides that

the fee imposed for the program and the supporting documentation "may be 'community or regionally specific' subject to approval by community management." Id. at 6 (citing Declaration of Mathilda S. McGee-Tubb in Supp. of Oppo ("McGee-Tubb Decl."), ECF No. 34-1, Exh. C.)  A review of the Clean Sweep policy indicates that while the fee charged for the program may vary by individual property, the program itself is determined by Defendant and any adjustments to the fee, as well as any "community or regionally specific forms or flyers," must be approved by Defendant's "Portfolio Maintenance Directors" or "Portfolio Operations Directors." McGee-Tub Decl., Ex. C.  The variations in the amount charged for the Clean Sweep program does not amount to a showing that there are substantive differences in how the Clean Sweep program operates across individual properties.  For these reasons, the Court finds that the documents produced by Defendants regarding the Clean Sweep program also support a *prima facie* showing that the program is a common corporate policy and procedure applicable to all of Defendant's California properties.

### E. Pending Central District Action

Plaintiffs argue that an "overlapping class action in the Central District" is further evidence that Defendant's practices are implemented statewide. MTC at 15.  Currently pending in the Central District of California is Renault, et al. v. AvalonBay Communities, Inc., C.D. Cal. Civil Case No. 8:25-cv-00729-FWS-DFM ("Renault") See https://pacer.uscourts.gov (website last visited Dec. 9, 2025).  This is a putative class action that does appear to be related to some of the claims in this matter and involves the same Defendant.  However, the pleadings in Renault are not settled due to a pending motion to dismiss and the defendants have not filed an answer to date. Id.  The Court is not persuaded that this Central District action, in its current stage of the proceedings, is evidence to support Plaintiffs' claims.

### F. Joint Stipulation

Finally, Plaintiffs rely on a joint stipulation that was entered in this matter dismissing the individual property level Defendants. MTC at 9 (citing Jnt. Stip., ECF No. 12.)  In this stipulation, the parties stipulate that Defendant, AvalonBay, managed security deposits for California properties, was responsible for creating, overseeing, and implementing security deposits and

move-out policies and procedures statewide, and has possession, custody, or control of statewide records. See ECF No. 12. Plaintiffs argue this is a concession by Defendant that they engage in statewide uniform policies and practices which constitutes the requisite *prima facie* showing. MTC at 13-14. Defendant argues Plaintiffs cannot rely on this joint stipulation because the parties agreed it would "not [be] admissible for any purpose" and that "[a]ll representations [t]herein by AvalonBay shall not be construed as an admission of liability or concession to any of Plaintiffs' theories of liability." Oppo at 9 (citing ECF No. 12 at 5.) In their reply, Plaintiffs argue that this language prevents the "use as a liability admission and bars use in other litigation – not consideration within this action for discovery scope." Reply at 4, fn. 1. The stipulations made in this joint stipulation support a finding that statewide discovery is relevant based on the statements that Defendant engages in centralized, uniform practices relating to the core issues in this matter. While the stipulation provides that it is not admissible for any purpose, such as an admission of liability or concession to a theory of liability, it does not expressly bar consideration of the stipulation for purposes of defining the scope of discovery consistent with Rule 26(b)(1). The Court finds this stipulation supports a finding that the scope of discovery should include statewide discovery reasonably related to security deposit administration and move-out policies and procedures for all California properties, including records, data, and communications within Defendant's possession, custody, or control concerning those topics.

The Court finds that the addition of the new Plaintiffs as well as the evidence provided by Plaintiffs and discussed above establishes that Defendant has uniform policies and procedures governing security deposits that are applicable to all of its California properties and are implemented and enforced by a central corporate entity. While Defendant has articulated the possibility of limited local variation of practices, it has not undercut the relevance of the evidence and conclusion. Accordingly, the Court finds that Plaintiffs met their Mantolete burden by providing evidence that the requested statewide discovery is likely to substantiate the class allegations and by making a *prima facie* showing that the Rule 23 class requirements are satisfied. The Court also finds that the requested statewide discovery is directly relevant to the issues and defenses in this case including commonality. Plaintiffs therefore are entitled to pre-

class certification discovery and Defendant is required to supplement its responses beyond the single property.

### 2. Undue Burden and Proportionality

The next issue is the scope of the authorized statewide discovery and Defendant's undue burden and related proportionality objections. Initially, the Court notes that Defendant admits that as to corporate policies, "many of the documents AvalonBay has produced (or will produce) apply to AVA Pacific Beach *and* AvalonBay's other California properties." Oppo at 1 (emphasis in original.) Unfortunately, Defendant does not clarify which produced documents apply to all California properties and which apply only to AVA Pacific Beach. Defendant also does not clarify whether there are responsive documents that do not apply to AVA Pacific Beach but do apply to other properties. To clarify Defendant's discovery responses, Defendant must supplement its responses to the discovery at issue in the pending motion to produce all responsive policies and procedures that are applicable to any of Defendant's California properties.

Defendant argues that the "only dispute is whether AvalonBay must go to extraordinary lengths to collect, review, and provide documents and information unique to 100+ California properties" by producing "thousands of individual tenants 'move-out packets.'" Id. Specifically, Defendant explains that AvalonBay manages "approximately 30,000 units" in California, and assuming an average two year tenancy, that would require Defendant to produce individual "move-out packets" for "60,000 former tenancies" for the four-year class period. Oppo at 12-13. Defendant contends that there is "no known mechanism for bulk collecting or downloading documents from AvalonBay's electronic or outside vendor storage systems" and would require the documents to be manually retrieved. Id. at 13.

In response, in order to "mitigate any burden and ensure proportionality," Plaintiffs propose a statewide sampling protocol of approximately 1-5% of tenant files across all of Defendant's California properties. MTC at 13-14. Plaintiffs argue that this data can be drawn from Defendant's "off-site and centralized apparatus for issuing security deposit accountings to former tenants," also known as "move-out packets." MTC at 13-14; Reply at 9, fn. 4. Defendant argues that "sampling does not remedy the burden" because "[e]ven taking a 1% sampling of

1  former tenancies during the class period would mean compiling "move-out packets" for
2  approximately 600 tenancies." Oppo at 18.



21       Relying on these numbers provided by Defendant, a two percent sampling of former
22  tenancies during the class period across all of Defendant's properties would require
23  approximately eighty-four hours to search for, manually download and compile move-out
24  packets including information from both ▇ and ▇ Defendant argues that
25  "compelling AvalonBay to undertake such a manual, time consuming, and labor-intensive
26  documents collection before class certification would be premature and unduly burdensome."
27  Oppo at 17 (citing Munguia-Brown v. Equity Res., 2017 WL 2645500, *6 (N.D. Cal. June 20,
28  2017). The Court does not find this argument persuasive. In Munguia-Brown, the plaintiffs

brought a putative class action against defendants who were allegedly charging tenants late fees that violated California Civil Code § 1671. 2017 WL 2645500, *1. Plaintiffs sought to compel defendants to produce draft budgets for approximately 144 properties that were at issue in the case. Id. at *3. The court denied this motion finding that while the information about late fees was relevant, the request was not proportional because of the 220 rows of financial data in the draft budgets, only one row related to late fees. Id. In contrast to Munguia-Brown, the entirety of the requested "move-out packets," which include the SODAs, IARs, and electronic communications, are relevant to Plaintiffs' core allegations in this litigation. The tenant records are relevant to Plaintiffs' class allegations and substantive claims that Defendant has standardized and unlawful practices regarding the administration of security deposits.

The Court denies Defendant's request to limit sampling to AVA Pacific Beach. The Court orders a statewide sampling of "move-out packets" limited to two percent of former tenancies during the four-year class period across all of Defendant's California properties. The two percent sampling shall be randomly selected using a mutually agreed-upon randomization protocol and drawn proportionally across properties statewide.

### 3. Privacy Concerns and Notice

Plaintiffs seek an order directing the issuance of a Belaire-West notice for a statewide class list to facilitate the production of putative class member contact information. MTC at 14-15. Plaintiffs' Special Interrogatories Nos. 1 and 2 request that Defendant provide a "class list" by identifying former tenants who had $126 or more withheld from their security deposits during the class period and participated in the Clean Sweep program. Id. Defendant opposes[4] and argues that the imposition on former residents' privacy is substantial, that Belaire-West notice is inadequate and burdensome, and requests that Plaintiffs bear any associated costs if notice is ordered by this Court. Oppo at 14-15.

---

[4] Plaintiffs indicate in their moving papers that the parties have agreed to a Belaire-West notice procedure for a class list and the only dispute is whether to apply it AVA Pacific Beach or all California properties. MTC at 14-15. However, Defendant's opposition does not mention any agreement and opposes Plaintiffs' request for a Belaire-West notice procedure. Oppo at 14-15.

      Defendant argues that the "imposition on former residents' privacy is substantial" because the move-out packets "may host private, personal information about former residents (including minors), such as photos of their homes or belongings; disability-disability related and fair housing accommodations or modifications; roommate and familial relationships; evidence of domestic violence or other highly sensitive or legal issues." Oppo at 14. Plaintiffs argue in response that Defendant's "asserted concern is speculative and illogical" because move-out packets are related to the "security deposit and finances" and it is "unclear why they would ever include private photographs of tenant's belongings or evidence concerning domestic violence." Reply at 10.

      The Belaire-West procedure originated in Belaire-West Landscape, Inc. v. Superior Court, which approved sending notice to putative class members in a wage and hour class action to allow them to opt out of disclosure of their contact information. Belaire-West, 149 Cal. App. 4th 554, 561, 57 Cal.Rptr.3d 197 (2007). The California Supreme Court later affirmed this approach in Williams v. Superior Court, holding that an opt-out notice sufficiently protected their privacy interests. 3 Cal. 5th 531, 555, 220 Cal.Rptr.3d 472, 398 P.3d 69 (2017).

      "Generally, federal courts in this circuit have held that a protective order, in lieu of a Belaire-West notice, sufficiently protects putative class members [] privacy interests in the confidentiality of their contact information." Amaraut v. Spring/United Management Company, 2020 WL 8024170, *7 (S.D. Cal. Jan. 14, 2020); see e.g. Goro v. Flower Foods, Inc, 334 F.R.D. 275, 288 (S.D. Cal. Aug. 27, 2018) (finding federal courts in this circuit generally hold that protective orders are adequate to safeguard privacy interests with regard to confidentiality of contact information). There is no federal requirement that parties use a Belaire-West notice and in general, federal courts in this circuit have generally "required Belaire-West notices only when there are special privacy concerns, such as the disclosure of medical or financial information, and/or when the parties have agreed to such notice." Austin v. Foodliner, Inc., 2018 WL 1168694, at *2, (N.D. Cal. Mar. 6, 2018).

      Here, the parties have entered into a joint protective order governing the handling of sensitive and confidential information. See ECF No. 21. The Court finds that the existing

protective order protects any confidential or sensitive information that may be contained in the move-out packets and that a Belaire-West notice is not required.  See Holland-Hewitt v. Allstate Life Insurance Co., 343 F.R.D. 154, 179 (E.D. Cal. 2002) (citing Austin, 2018 WL 118694, at *2) ("The predominant practice among courts in the Northern District of California is to allow pre-certification discovery of putative class members' confidential contact information subject to a protective order, without requiring a Belaire-West notice."); see also Trullijo v. Chef's Warehouse West Coast LLC, 2020 WL 7315346, at *24 (C.D. Cal. Oct. 19, 2020) (Declining to direct issuance of Belaire-West notice finding protective order negotiated by the parties "sufficient to protect the privacy interests at stake.")

Accordingly, the Court DENIES the request to direct a Belaire-West notice be issued.

## CONCLUSION

For the reasons stated above, Plaintiffs' Motion to Compel is **GRANTED IN PART** as follows:

1. Defendant is **ORDERED** to provide further responses to RFP Nos. 1-8, 17-19, 28, 31, 33-34, 36, 40-45 and interrogatories Nos. 3-10, 15-19.  On or before **January 9, 2026**, Defendants shall supplement their responses to include all properties owned in California

2. Parties are **ORDERED** to meet and confer on or before **December 30, 2025** to develop a randomization protocol for a two percent statistical sampling of "move-out packets."

3. On or before **January 23, 2026** Defendant is **ORDERED** to produce a two percent statistical sampling of the move-out packets for the relevant class period across all properties owned by Defendant in California**.**

4. Plaintiffs' motion for order compelling further responses to Interrogatories 1-2 and request for issuance of a Belaire-West notice is **DENIED**.

**IT IS SO ORDERED**.

Dated:  12/18/2025

Hon. Barbara L. Major
United States Magistrate Judge