UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

MARK WATKINS, et al.,

Plaintiffs,

v.

AVALONBAY COMMUNITIES, INC.,
et al.,

Defendants.

Case No.: 25-cv-01119-AJB-BLM

**ORDER GRANTING DEFENDANT AVALONBAY COMMUNITIES, INC.'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

**(Doc. No. 70)**

Before the Court is a motion to dismiss Plaintiffs' First Amended Complaint (Doc. No. 53, "FAC") filed by Defendant AvalonBay Communities, Inc. ("AvalonBay"). (Doc. No. 70.) The Court finds the motion suitable for determination on the papers. *See* CivLR 7.1.d.1. For the reasons set forth herein, the Court **GRANTS** AvalonBay's motion to dismiss.

## I.      BACKGROUND

On March 3, 2025, Plaintiffs Mark Watkins, William Crosier, and Alex Tharappel filed the instant putative class action in state court against AvalonBay. (Doc. No. 1-2.) Two months later, AvalonBay removed the action to federal court pursuant to the Class Action Fairness Act. (Doc. No. 1.) On May 30, 2025, AvalonBay filed an answer. (Doc. No. 9.)

25-cv-01119-AJB-BLM

After holding an Early Neutral Evaluation and a Case Management Conference (Doc. No. 16), the Court issued a Scheduling Order, which *inter alia* set the deadline to file a motion to amend as December 5, 2025, (*see* Doc. No. 17). Plaintiffs timely filed a motion for leave to amend (Doc. No. 49), which AvalonBay did not oppose (Doc. No. 51). The Court granted the motion (Doc. No. 52), and Plaintiffs filed the FAC (Doc. No. 53).

In the FAC, Plaintiffs assert the same two claims as the initial complaint: (1) unlawful retention of residential security deposits in violation of California Civil Code § 1950.5 ("Section 1950.5") and (2) violation of California Business and Professions Code §§ 17200, et seq. ("UCL"). (*Id.*) At issue in the instant motion to dismiss is only the latter cause of action. (*See* Doc. No. 70.)

In relevant part, the FAC alleges that AvalonBay, which manages an "expansive empire of residential apartment complexes," "systematically fails to issue code-compliant disclosures to substantiate deductions from their California tenants' security deposits," in order "to obscure fraudulent charges in part or in whole" and "further, employes [sic] an unlawful scheme known as its 'Clean Sweep Program' that provides tenants with 'the option' to pay a 'cleaning fee' upon their departure." (FAC ¶¶ 33–34, 38.) The "unsubstantiated" and "unreasonable" charges "often exceed the amount of the deposit," at which point AvalonBay "causes a bill, and sometimes a collections notice, to be sent to former tenants[.]" (*Id.* ¶ 39.) "This conduct has resulted in damages to former tenants both through the collection of such amounts and by the reporting of such alleged debts to third parties, defaming former tenants, damaging their credit and impairing their ability to rent other apartments." (*Id.*) For example, Plaintiff Mark Watkins received a collection notice from Hunter Warfield seeking the full amount AvalonBay claimed was owed. (*Id.* ¶ 59.) Similarly, Plaintiff Alex Tharappel received a collection notice from Hunter Warfield seeking $1,182.10 AvalonBay claimed was owed, and Plaintiff Tharappel paid the amount under protest for fear of jeopardizing his credit score and ability to lease future apartments. (*Id.* ¶¶ 71–72.) As a remedy for the UCL claim, Plaintiffs seek restitution, declaratory relief, and injunctive relief. (*Id.* ¶¶ 141–42.)

25-cv-01119-AJB-BLM

## II.      LEGAL STANDARD

### A.      Federal Rule of Civil Procedure 12(b)(1)

Article III, Section 2 of the Constitution limits federal courts to hearing "actual cases or controversies." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016). This limitation means the plaintiff must have standing to sue. *Id.* at 338. To establish standing, a plaintiff must demonstrate the "irreducible constitutional minimum" of: (1) an injury-in-fact via "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2) causation—that the injury is "fairly traceable to the challenged action of the defendant"; and (3) redressability—that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal citations and quotations omitted). "[A]t the pleadings stage, the plaintiff must clearly allege facts demonstrating each element." *Spokeo*, 578 U.S. at 338 (citation and internal punctuation omitted).

A motion to dismiss for lack of standing is brought pursuant to Federal Rule of Civil Procedure 12(b)(1). *See Chandler v. State Farm Mut. Auto. Ins. Co.,* 598 F.3d 1115, 1122 (9th Cir. 2010). Such a motion can be facial or factual in nature. *Pride v. Correa*, 719 F.3d 1130, 1139 (9th Cir. 2013). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). The Court "resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

### B.      Federal Rule of Civil Procedure 12(b)(6)

"A Rule 12(b)(6) motion tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "The court may dismiss a complaint as a matter of law for (1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal

claim." *SmileCare Dental Grp. v. Delta Dental Plan of California, Inc.*, 88 F.3d 780, 783 (9th Cir. 1996) (citation and internal quotation marks omitted). To defeat a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"In deciding such a motion, all material allegations of the complaint are accepted as true, as well as all reasonable inferences to be drawn from them." *Navarro*, 250 F.3d at 732; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."). Notwithstanding this deference, the reviewing court need not accept legal conclusions as true. *Iqbal*, 556 U.S. at 678. "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotations and citation omitted).

## III.    DISCUSSION

AvalonBay seeks dismissal of Plaintiffs' UCL claim on two grounds: (1) lack of standing because Plaintiffs do not allege future injury and (2) failure to state a claim because Plaintiffs do not plead an inadequate remedy of law. (*See generally* Doc. No. 70-1.)

### A.    Article III Standing for Injunctive Relief

The Court first addresses AvalonBay's argument that Plaintiffs do not have standing to bring a UCL claim for injunctive relief. (*See* Doc. No. 70-1 at 11–13.) Specifically, AvalonBay argues Plaintiffs, who are all former residents of AvalonBay properties, only allege suffering past injury and do "not even attempt[] to allege a likelihood of future harm[.]" (*Id.* at 13.)

A court has no subject matter jurisdiction to hear a claim where the plaintiff lacks standing under Article III of the Constitution. *Spokeo*, 578 U.S. at 338. "[A] plaintiff must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc.*

*v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000) (citing *Lujan*, 504 U.S. at 560–61). "In order to have Article III standing to seek prospective relief, [Plaintiffs] must allege either continuing, present adverse effects due to [their] exposure to Defendants' past illegal conduct or a sufficient likelihood that [they] will again be wronged in a similar way." *Villa v. Maricopa Cnty.*, 865 F.3d 1224, 1229 (9th Cir. 2017) (cleaned up).

In their opposition to AvalonBay's motion, Plaintiffs' arguments relate to both categories of injury addressed by *Villa*. (*See generally* Doc. No. 77.) First, Plaintiffs proffer different theories of ongoing adverse effects. (*See id.* at 15–16.) For example, Plaintiffs point to the allegation that "Defendant's reporting of alleged debts that it knows are disputed and are barred by operation of law following their bad faith failure to adhere to the Civil Code section 1950.5's security deposit scheme is an unlawful, unfair and fraudulent practice that has caused harm to Plaintiffs and the Plaintiff Class" (FAC ¶ 140) as "present-tense harm" (Doc. No. 77 at 15; *see also id.* ("Here, the harm is not a completed event—it is an active collections campaign that has not been withdrawn, credit damage that persists, and disputed balances that remain on Plaintiffs' accounts.").) AvalonBay responds that the conclusory allegation is insufficiently pled with respect to any of the named Plaintiffs. (Doc. No. 80 at 8–9.) Despite seeking to have the Court "declare all alleged outstanding balances owed by class members invalid and prohibit collection thereupon," the named Plaintiffs do not allege any current harm to their credit scores or outstanding debts AvalonBay or collectors are attempting to retrieve.

In addition to this general allegation, Plaintiffs argue they have alleged specific ongoing harm to Plaintiffs Watkins and Tharappel. For example, Plaintiffs point to the allegation that Plaintiff "Watkins received a collections notice from Hunter Warfield seeking the full amounts claimed owed by AvalonBay" (*see* FAC ¶ 59) and assert that "the collections activity has not been withdrawn." (Doc. No. 77 at 14.) However, the latter assertion is not alleged in the FAC. (*See generally* FAC.) Additionally, Plaintiff asserts that Plaintiff Tharappel's payment under protest of a collections notice from Hunter Warfield is sufficient ongoing injury. (Doc. No. 77 at 14–15 (relying on *Aho v. AmeriCredit Fin.*

*Servs., Inc.*, 277 F.R.D. 609, 623 (S.D. Cal. 2011)).) Because Plaintiff Tharappel paid the debt to protect his credit (*see* FAC ¶ 72), there is no ongoing harm that an injunction would end. In contrast, the named plaintiff in *Aho* had an invalid debt reported to various credit agencies. *See Aho*, 277 F.R.D. at 613–14.

Second, with regard to a likelihood of future harm, Plaintiffs assert that they "cannot rely on AvalonBay's representations about deposit handling in any future lease in any of those locations[.]" (Doc. No. 77 at 15–16 (relying on *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969-70 (9th Cir. 2018)).) Plaintiffs also rely on the "deterrent effect doctrine" the Ninth Circuit applies in cases brought pursuant to Title III of the Americans with Disabilities Act ("ADA"). (*Id.* at 16 (relying on *C.R. Educ. & Enf't Ctr. v. Hospitality Props. Trust*, 867 F.3d 1093, 1101–02 (9th Cir. 2017)).) In both the false advertising and the ADA context, the plaintiffs alleged that they would patronize the goods or establishment again if not for the offending conduct. *See Davidson*, 889 F.3d at 962 ("Davidson has never again purchased flushable wipes. Yet Davidson 'continues to desire to purchase wipes that are suitable for disposal in a household toilet,' and 'would purchase truly flushable wipes manufactured by [Kimberly–Clark] if it were possible to determine prior to purchase if the wipes were suitable to be flushed.'"); *C.R. Educ. & Enf't Ctr.*, 867 F.3d at 1099 ("The Named Plaintiffs have alleged in the First Amended Complaint that they intend to visit the relevant hotels, but have been deterred from doing so by the hotels' noncompliance with the ADA. They further allege that they will visit the hotels when the non-compliance is cured. Thus, the ADA violations have prevented them from staying at the hotels. Without such averments, they would lack standing."). In contrast here, as noted by AvalonBay (*see* Doc. No. 80 at 10–11), Plaintiffs make no such allegations in the FAC, despite proffering such arguments in opposition. (*Compare generally* FAC *with* Doc. No. 77.)

Finally, Plaintiffs assert that, pursuant to *McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (2017), "at the pre-adjudication stage, a plaintiff is not required to submit evidence establishing that the alleged conduct is 'ongoing or likely to recur' in order to seek a public

injunction; it is sufficient that the complaint alleges ongoing conduct and requests injunctive relief." (Doc. No. 77 at 16–17.) However, *McGill* did not address standing in federal court, but rather the validity of an arbitration provision under state law. *See McGill*, 2 Cal. 5th at 951–52 ("The question we address in this case is the validity of a provision in a predispute arbitration agreement that waives the right to seek this statutory remedy in any forum. We hold that such a provision is contrary to California public policy and is thus unenforceable under California law."). The Court agrees with AvalonBay that Plaintiffs' reliance "twists *McGill* . . . beyond recognition." (*See* Doc. No. 80 at 9.)

Because the named Plaintiffs fail to allege either that there is outstanding debt collection, that there is ongoing impact to their credit, or that they would seek to rent from AvalonBay again, Plaintiffs do not have standing for prospective injunctive relief. Accordingly, the Court **GRANTS** AvalonBay's motion to dismiss on this ground.

## B.    Lack of Adequate Remedy at Law

Second, the Court addresses AvalonBay's motion to dismiss on the grounds that the Court lacks equitable jurisdiction to hear the UCL claim. (*See* Doc. No. 70-1 at 9–11.) Specifically, AvalonBay also seeks to dismiss Plaintiffs' UCL claim for failure to allege no adequate remedy at law. (*Id.* (relying on *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 837–42 (9th Cir. 2020)).) "At a minimum," AvalonBay argues, "Plaintiffs' claim for restitution under the UCL cannot stand" because it seeks "the same damages Plaintiffs seek as actual damages under their Section 1950.5 count." (*Id.* at 11.)

In response, Plaintiffs assert that "[t]he UCL claim seeks remedies that are categorically different from section 1950.5 statutory damages," specifically injunctive relief "for which monetary damages are inherently inadequate." (Doc. No. 77 at 10–11.) Plaintiffs assert that they "cannot verify whether AvalonBay has reformed its deposit practices across 91 apartment complexes, whether disputed debts have been withdrawn from Hunter Warfield, or whether their credit reports have been corrected." (*Id.* at 11–12.)

"The UCL provides only for equitable remedies." *Guzman v. Polaris Indus.*, 49 F.4th 1308, 1313 (9th Cir. 2022) (citation omitted). "The doctrine of 'equitable jurisdiction'

places limits on the equitable powers of federal courts." *Ruiz v. Bradford Exch., Ltd.*, 153 F.4th 907, 910 (9th Cir. 2025). "In order to entertain a request for equitable relief, a district court must have equitable jurisdiction, which can only exist under federal common law if the plaintiff has no adequate legal remedy." *Guzman*, 49 F.4th at 1313; *see also Sonner*, 971 F.3d at 844 ("[T]he traditional principles governing equitable remedies in federal courts, including the requisite inadequacy of legal remedies, apply when a party requests restitution under the UCL and CLRA in a diversity action."). "Although *Sonner* only spoke about restitution for past harms, various district courts have since found that the decision applies to equitable claims for injunctive relief based on future harm as well." *Grausz v. Hershey Co.*, 713 F. Supp. 3d 818, 831 (S.D. Cal. 2024). Plaintiffs bear the burden to establish they lack an adequate damages remedy before they can obtain equitable relief. *See Sonner*, 971 F.3d at 844; *see also McIntyre v. Am. Honda Motor Co.*, 739 F. Supp. 3d 776, 804 (C.D. Cal. 2024) ("Although Plaintiffs may plead legal and equitable remedies in the alternative in some circumstances, they must still affirmatively plead that they lack an adequate remedy at law.") (collecting cases).

In attempting to distinguish AvalonBay's proffered case law, Plaintiffs incorrectly characterize AvalonBay's argument as "suggest[ing] this Court categorically bars UCL claims under *Sonner*." (Doc. No. 77 at 12.) AvalonBay's motion merely restates "the nature of the federal courts' equitable powers": namely that "the necessary prerequisite for a court to award equitable remedies is the absence of an adequate remedy at law." *Sonner*, 971 F.3d at 842 (cleaned up). Additionally, Plaintiffs state that "[t]he class-action context [here] is dispositive," where "over 100,000 tenants are affected by a uniform practice[.]" (Doc. No. 77 at 13.) Plaintiffs then, without case law, try to sidestep federal pleading standards by asserting that, under such circumstances, "the inadequacy of legal remedies is structural, not merely pleading-dependent." (*Id.*) Not only do Plaintiffs fail to identify any case law in support of such a stance, Plaintiffs also are incorrect in asserting that *Prescott v. Saraya USA, Inc.*, No. 23-CV-00017-AJB-MMP, 2025 WL 1361486 (S.D. Cal. May 9, 2025), and *Blain v. Liberty Mut. Fire Ins. Co.*, No. 22-CV-00970-AJB-DEB, 2023 WL 3612390 (S.D.

Cal. May 22, 2023), involved individual plaintiffs. (Doc. No. 77 at 12–13.) Both were putative class actions, as is the instant action. The named plaintiffs in putative class actions, like their counterparts in individual actions, must provide sufficient allegations to invoke the Court's equitable jurisdiction.

Plaintiffs proffer multiple theories in opposition; however, the FAC does not allege Plaintiffs' legal remedies pursuant to Section 1950.5 are inadequate. (*Compare* Doc. No. 77 at 10–12 *with* FAC.) As such, the Court lacks equitable jurisdiction to hear Plaintiffs' UCL claim. Thus, the Court **GRANTS** AvalonBay's motion to dismiss on this ground. *See, e.g.*, *McIntyre*, 739 F. Supp. 3d at 804 (granting the defendants' motion to dismiss having found the court lacked equitable jurisdiction because the plaintiffs did "not allege or otherwise explain how their legal claims would not provide them an adequate remedy"); *Blain*, 2023 WL 3612390, at *3 (dismissing the plaintiff's UCL claim for failing to "point to any facts in support of an allegation that there is no adequate remedy at law" because such a conclusory statement "does not pass the pleading standards established by *Iqbal* and *Twombly*").

### C.    Leave to Amend

AvalonBay asserts Plaintiffs should be denied leave to amend because "amendment would be futile" and "Plaintiffs cannot show 'good cause' to modify the scheduling order." (Doc. No. 70-1 at 10–11, 14–16.) In so arguing, AvalonBay relies on cases inapposite to the procedural posture here, namely cases where the litigation was much more advanced and the plaintiffs sought to add new causes of action. *See, e.g.*, *Del Rio v. Virgin Am., Inc.*, No. CV 18-1063-GW(SKX), 2019 WL 210957 (C.D. Cal. Jan. 3, 2019) (denying a motion for leave to amend to add three new causes of action); *Agricola Baja Best, S. De. R.L. de C.V. v. Harris Moran Seed Co.*, No. 11CV2482-IEG JMA, 2013 WL 4499118 (S.D. Cal. Aug. 20, 2013) (denying leave to amend to allege new legal theories); *Emerald Site Servs., Inc. v. Pape Mach., Inc.*, No. 2:23-CV-02982-DJC-AC, 2025 WL 2549171 (E.D. Cal. Sept. 4, 2025) (denying leave to amend to add two new plaintiffs, a new defendant, new factual allegations, and two new causes of action); *Chaffin v. Centurion of Arizona, LLC*, No. CV-

25-cv-01119-AJB-BLM

22-02034-PHX-DWL (MTM), 2025 WL 834916 (D. Ariz. Mar. 17, 2025) (denying the plaintiff's motion for leave to amend after the court granted the defendants' motion for summary judgment).

Plaintiffs request leave to amend, asserting that "[a]ny *Sonner* [and standing] deficienc[ies] can be easily addressed via a single paragraph alleging, with factual specificity, why section 1950.5 damages are inadequate for the categories of harm alleged." (Doc. No. 77 at 14, 19–20.) Plaintiffs also argue that AvalonBay's Rule 16 "argument mischaracterizes what 'diligence' means in this context and confuses factual development with legal foresight." (*Id.* at 19.)

Pursuant to Rule 15, "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). However, "[o]nce the district court ha[s] filed a pretrial scheduling order pursuant to Federal Rule of Civil Procedure 16 which establishe[s] a timetable for amending pleadings that rule's standards control[s]." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607–08 (9th Cir. 1992). "Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Id.* at 609. "The district court may modify the pretrial schedule 'if it cannot reasonably be met despite the diligence of the party seeking the extension.'" *Id.* (quoting Fed. R. Civ. P. 16 advisory committee's notes (1983 amendment)).

AvalonBay is correct that, because a Scheduling Order has been issued, amendment is governed by Rule 16. The Court finds that Plaintiffs have acted with diligence to comply with the Scheduling Order. Plaintiffs amended the complaint once pursuant to the deadline set by the Court. (*See* Doc. Nos. 17 (Scheduling Order); 49 (Motion for Leave to File FAC).) This request for leave to amend comes in Plaintiffs' opposition to the motion to dismiss, which is the first instance that Plaintiffs could make such a request upon being alerted to AvalonBay's allegations of its deficiency. (*See* Doc. No. 77.) In fact, AvalonBay did not choose to challenge the initial complaint with a Rule 12 motion, despite Plaintiffs

25-cv-01119-AJB-BLM

alleging the same two causes of action. (*See* Doc. No. 9.) Finally, the instant litigation is still in its early stages. (*See* Doc. No. 17 (Scheduling Order).) Accordingly, the Court finds that leave for limited amendment is appropriate.

The Court **GRANTS** Plaintiffs leave to amend **for the limited purpose** of providing (1) a plausible factual basis to allege Article III standing for the UCL claim and (2) a plausible factual basis as to why there is no adequate remedy at law for the UCL claim. Further amendments to address inadequacies will not be entertained.

## IV.   CONCLUSION

Based on the foregoing, the Court **GRANTS** AvalonBay's motion to dismiss on both grounds, **DISMISSES** the UCL claim **without prejudice**, and **GRANTS** Plaintiffs limited leave to amend.[1] If Plaintiffs choose to pursue amendment, a second amended complaint must be filed **no later than April 13, 2026**. AvalonBay must file a response to the operative complaint **no later than April 20, 2026**.

**IT IS SO ORDERED.**

Dated:  April 6, 2026

Hon. Anthony J. Battaglia
United States District Judge

---

[1] AvalonBay seeks dismissal with prejudice. (*See* Doc. No. 70-1 at 16.) Even if the Court were not granting leave to amend, the Ninth Circuit has held that, where a district court lacks equitable jurisdiction over a UCL claim, it should dismiss the "UCL claim without prejudice to refiling the same claim in state court." *Guzman*, 49 F.4th at 1314.